Good afternoon, your honors, counsel, may it please the court, my name is Brian Reyna with the office of the state appellate defender representing the appellant Marcus Washington. Good afternoon, assistant state's attorney Lisanne Pugliese, appearing on behalf of the people of the state of Illinois. Okay, just a reminder, these microphones are for recording that amplification, so keep your voice up not only for the people in attendance here, but for those of us who have issues with hearing. Okay? And ordinarily there are a lot of issues in this case, and you know, complicated factually and some complicated legal issues, we would give you a lot more time, but this isn't our first time around the block with this particular group of defendants, so we're quite familiar with the facts having issued one other opinion in the Vesey case, and there's another pending Vesey matter along with this.  Yes, your honor. Okay. And like 15 minutes for the state? Okay. And if you, you know, go a little long, if we intrude, we're not going to get all that fussy about it, but why don't we proceed? May it please the court, your honors, this is a case where trial counsel unnecessarily joined two distinct, separately charged armed robbery cases with an unrelated felony murder case, even though she raised disparate defenses in each of the cases, and the murder had never been admitted as other crimes evidence in the armed robbery cases. Additionally, one of the robberies was not admitted as other crimes evidence into the other. Making matters worse, the trial court issued an inaccurate other crimes jury instruction that encouraged the jury to substantively consider the murder in the armed robbery cases and the armed robberies against each other. To top it off, the state argued in closing that the jury could consider the murder case for propensity in deciding guilt in the armed robbery cases. These errors left Washington with no chance of success in the armed robbery cases. We're going joinder, but there's no question that the joinder requirements were satisfied here. Is that correct? Go ahead. I'm sorry. That is not correct. In fact, as detailed in the briefs, I would argue all of the factors weighed against joinder. We have, you know, the time and location, these are... Wasn't there evidence linking these crimes together? Your Honor, there's no evidence linking the crimes together and no evidence establishing that this is one comprehensive transaction or there's some larger criminal endeavor at issue here. How can you say that when there's the rental car, there's the garage and the alleys and that they're looking for someone going around, this will all happen within a two week period except for one instance they're close together, and that one, you know, is 15 miles away from the others. But when you look at what occurred at each of the incidences, there's numerous similarities. We're supposed to ignore all that? Well, Your Honor, there are a few things you addressed that I would like to respond to. First, there was no evidence, independent evidence of a rental car used in the first robbery, the Hawkins robbery. The enterprise agent testified the rental car, the first rented car didn't even occur until the day before the Herrera murder. So the evidence isn't the same in that regard. Again, these crimes did occur 10 days apart, up to 15 miles apart, all across the city, different times of the day, different situations. Mr. Washington's role in each offense was different. What's your conception? His role may have been different, isn't it? I think that was the state's theory. I mean, the state presented evidence indicating he was an accomplice in one and a person who possessed a firearm in another. There were three people involved in one, two people in another of these armed robberies. So, and the fact that these were armed robberies involving a car does not make them distinct offenses in any way. That is a common armed robbery. This is not a unique fact pattern in that regard. So, given the fact these were separate transactions, the factors for joinder were not met. But I think the overarching problem here in this case is even if these cases were properly joined, the trial procedure did not allow for a successful joinder theory. I mean, to the extent this was a completely untenable strategy. But even so, Bob. It clearly was a strategy. This was something that the defense talked about doing. The defendant was brought out in open court and talked about it with the trial judge. And this was something that they had decided upon once they realized that the other crimes evidence was coming in. Right? Your Honor, this was not a strategy that left Washington with any chance of success. I know. I know. You don't agree with the strategy. Right? You think it was a pretty stupid strategy. Deficient. Constitutionally deficient. Exactly. There's no strategic reason. There's no advantage to Washington to joining these cases. And as Your Honor mentioned, counsel's strategy was to keep out the other crimes evidence. And she didn't even wait to see if the state was going to introduce or make a motion to introduce other crimes of the murder into the armed robberies. I mean, counsel's primary job is to utilize the rules of evidence and law to keep out potentially damaging evidence. And here, she just threw them in the towel once the robberies were admitted into the murder. And there were reasons for the robberies to be admitted into the murder that aren't present in reverse. Specifically, the armed robberies were admitted for identity and intent. They were admitted for intent in the murder because Washington raised a compulsion defense. They were admitted for identity because there was no eyewitness. Neither of those things are true of the armed robberies. Washington raised an alibi defense and a misidentification defense. And just the idea that counsel was saying, on one hand, I'm going to challenge the evidence of his participation in these cases. But I want the jury to make sure they know that we're admitting his participation in this other offense that's way more brutal. That ought to help. I mean, it's just preposterous. Well, he confessed to it, too. The one that you're just talking about. He took the police to the scene where that man was beaten to death. Yes, Your Honor. And that's even more reason not to join the cases. All right. Let's go through what we have to go through in the Strickland. First, we have to say that the performance was deficient, constitutionally deficient, right? Correct. But there's a second prong. And in a case where you have so much evidence coming from the defendant's mouth, okay, spoken to the investigating officers, how can you prove prejudice here? The amount of evidence that came in through the murder that would not have been admitted in separate trials, even if, which I do not concede in any way that these were properly joined or that that could have qualified as another crime in the murders, the amount of evidence from the murder was simply astonishing. The jury heard a life-death witness. They heard a pathologist who testified about the extent of this victim's injuries, even though there were no injuries in the armed robbery cases. They heard a video confession from Washington, and the statements in the armed robberies were unmemorialized confessions. I know you'd like it to be tried with as little evidence as possible, but the state had a lot of evidence here. That is evidence in the murder case, though, Your Honor, and that evidence would not have been admitted in separate armed robbery trials, even if, even if this, which, again, we don't know if the state would have attempted to use the murder in the armed robbery cases, but even if it were admitted hypothetically as other crimes evidence in the robberies, all of that evidence that I just discussed is not coming in. You know, if you, if it was a situation where you didn't have the defendant confessing to various aspects of the robberies and the participation in the felony murder, if you didn't have the testimony from Funches or Funches, however you pronounce the name, about what the defendant had told him, you might be on firmer ground here, but it's, in order to satisfy the second prong, you have to show us that the, a reasonable probability that the outcome would have been different. I think you've got issues there. Well, Your Honor, the prejudice is in the armed robbery cases, so when you're talking about Funches' grand jury testimony and the video evidence, that's, that's evidence in the murder case. So, joining the armed robberies allowed that evidence, and that evidence doesn't exist in the armed robbery cases. In the armed robbery cases, the evidence was not overwhelming by any means. Both of them basically relied on an unremorialized statement, and in one case, a questionable identification, and in another case, no identification. So, all of this evidence that came in from the murder case, which, again, is quite substantial, very easily could have tipped scales against Washington and the two armed robberies. This is, I mean, other crimes' evidence is inherently prejudicial for the reason, I mean, it's in, well, in the rule of general, it shouldn't be prejudicial. If you're involved in this many robberies, there's going to be some prejudice, right? Well, again, Your Honor, the evidence was from the murder, but that evidence was not part of the robbery cases. Counsel decided to make it part of the robbery cases. Excuse me. He agreed to it. The judge asked him, do you agree to this? Do you understand it? Do you agree? He said he agreed to it. He invited it. So, how do you now come back and say, well, I want a do-over? Well, Your Honor, this case is very different from Zerko in terms of the waiver-type issue. In Zerko, it is in the record, the state actually went out of its way to put on the record that there was a knowing and intelligent waiver, and that counsel had discussed the consequences of joining, including the evidence that would exclusively be admitted in separate trials may come in in the joint trial, and there's absolutely nothing in the record indicating that Washington understood this, or even the counsel understood it. There is evidence in the record saying that Washington agreed after an off-record discussion with counsel. We have no idea what counsel told Washington, and without a record demonstrating that he understood the consequences of joinder, he cannot make a knowing and intelligent waiver. This is what he's relying on trial counsel to do, is navigate, you know, the legal technicalities of the proceeding. This is something you would know nothing about. But your argument seems to belie every time a defendant agrees to something in front of a judge with counsel present, then we can doubt whether he or she understood it. I don't understand how in this case we should be treating this defendant any different. I don't think we are, Your Honor. I mean, in any case we should find out. We don't know what the attorney told him, you know, without that information. We don't have that in any other case either. Well, Your Honor, respectfully, I don't disagree. For instance, if we're talking about a jury waiver, there's going to be issues on appeal whether the waiver was knowing and intelligent, and the record has to contain. Well, there's a rule about that. This is a different situation. Is there any rule that says what we have to put on the record for the defendant to say that he or she agrees to joinder? Well, Your Honor, in a jury waiver case, that is a decision that's for the defendant. This isn't a decision that the defendant can make, joinder. This is a decision for trial counsel, so that's why there wouldn't be a rule about it. But if you could even apply that type of rule to this case, there would have to be some evidence of a knowing and intelligent waiver. I mean, the State recognized that in Zerko, and that's why I think they went out of their way to put that onto the record. And again, we have other problems in this case aside from the propriety of ultimately joining the cases, which is, you know, the jury instruction, which was inaccurate. It was likely to confuse the jury. And then the State, the prosecutor, came in in closing and told the jury to consider the murder for propensity. So given those errors, even if joinder were proper, this was not a fair trial. There was no possibility that the jury would have been able to separate out the evidence as it was admitted. What kind of evidence would there have been? So there's no evidence. What should have happened? I'm sorry, no evidence of what should have happened? The jury wasn't able to determine the difference between the two. Well, in Johnson, the court talked about issuing an instruction that it delineates between charged defenses and uncharged defenses. And that should have happened because this case involved both charged defenses and uncharged defenses. There were uncharged defenses that came in through Washington's video statement in the murder case, including what the State admits now is an admission to an uncharged armed robbery the day of the Herrera murder. And additionally, they should have separated out which cases other crimes evidence had been admitted in. But also, this is similar to Johnson in that even if this were done, this case is too convoluted. There's no way a jury can separate out all of this evidence. Case one was admitted in case two, but not case three. And one didn't go into three, but went into two. That's quite a Herculean task for lawyers. The defense lawyer agreed to the joinder, okay? And we have to presume under the case law, Ziarco and other cases, that that was a matter of trial strategy. And I know you disagree with that, and you can say that it was too convoluted and too complicated, but we're supposed to presume that that's trial strategy. And then you have to get over the prejudice issue as well. Yes, Your Honor, the mere fact that you could qualify something as a strategy is not enough. It has to be a sound strategy. And the State has not identified any strategic reason to join these cases. It seems like convenience might be the only reason. There's no benefit to Washington to having this substantial amount of evidence from the murder case being considered substantively and for propensity to commit armed robberies against him. There's no chance he can win this case with this strategy. This is not a sound strategy under Strickland. What did Judge Ford rule in terms of the admissibility of other crime evidence? Judge Ford found the Hawkins robbery was admissible in the Hassan robbery for identity, intent, and modus operandi. And did you raise that as an issue on appeal? No, I did not challenge that ruling directly. No. And the issue for the jury instruction, IPI 3.14, isn't that forfeited? Was there an objection at trial? Was there an objection in the post-trial motion? Well, Your Honor, this is part of counsel's deficient representation. No, it wasn't. I mean, if counsel wanted to, if you could somehow consider this to be a sound strategy, then she's got to effectuate it completely. She's got to request the proper instruction and make sure the jury can separate out this evidence. As Johnson discusses, this would have been impossible anyway. But if this could be strategic somehow, counsel really dropped the ball by not requesting an instruction and ultimately in the trial court as well. So you're tying it to the incompetent or ineffective lawyering as opposed to plain error? It could, Your Honor, any of those theories would warrant reversal. The fact that counsel didn't object, yes, makes it part of an ineffective assistance argument. But ultimately it's the trial court's duty to issue the instruction, in which case this would be plain error. This was actually discussed in Johnson where the court said, you know, counsel's failure to request this instruction and join these cases really put the trial court in a difficult position where they had three bad options. And the same three bad options existed here. The court could have issued, which is what it did, an inaccurate instruction. It could have issued an overly convoluted instruction that would have confused the jury. Or it could have settled the cases. And Johnson concluded that settling the cases was the right answer. And just looking at the evidence here in a practical sense, I think it's apparent that that is what should have been done here as well. So you're saying the evidence here is not closely balanced on these three charges? The evidence is absolutely closely balanced, Your Honor. Each case, each of the robbery cases, I can take them one at a time. In the Hassan robbery, we'll just start at the beginning. The Hawkins robbery, which occurred first. I meant not closely balanced. Okay. Yeah, well, the evidence is closely balanced. That's what you think. So that's my question. Why? Why? Okay. In the Hawkins robbery, we had an unmemorialized statement. Officers always try to memorialize statements because they're more reliable. There are reasons to doubt an unmemorialized statement. The only identification evidence is Hawkins, who admits he was looking at a gun at the time of the offense and not the offenders. His description of the offender doesn't match Washington. And he missed or doesn't remember the offender having any tattoos. Washington's arms are covered in tattoos, both of them. In the Hassan case, Hassan looked at a lineup with Washington in it and did not identify him as one of the offenders. He described two offenders, 1511 and 158. He then identified Vessi as the one who was 511. Vessi's actually about six feet. Washington is 6'2". He's not the 5'8 guy. And on top of that, the only evidence in that case is an unmemorialized statement as well. So these are cases where the admission of this mountain of evidence from a murder case easily could have tipped the scales here. And the state's theory, I mean, now it appears on appeal and at trial, is kind of once these cases are joined, it's just a free-for-all. And that's evidence by the fact that the prosecutor's arguing that you can consider the murder to show this is what he does. Which is completely improper. And also, even in discussing functions as grand jury testimony, he said you can consider this without limitation. That's not how this works. Once cases are joined, they're still subject to other crimes' rules. The jury here is allowed to consider everything against everything else. And that can't result in a reliable verdict. If there are no further questions, Your Honor, I would ask that you reverse Washington's suspicions and remand his case for new trials. Thank you. Thank you. May it please the Court, Counsel. Despite defendants' express agreement on the record to trial counsel's clear trial strategy to join these three cases, he now claims that counsel was ineffective for exercising that strategy the defendant, in fact, agreed to. However, counsel was not ineffective here, where clearly the record indicates this was a matter-appointed trial strategy to join these three cases. The cases were properly joined, and defendant has failed to show any prejudice as a result of counsel's request. Why is it a more compelling case for the defendant if they're joined as opposed to being severed? In this instance, the press attorney had three cases, right? A murder and two armed robberies. She had to look at it all as a whole. I am defending these three cases, and I have a murder. That's the big ticket item. How am I going to best defend this murder? Those armed robberies were already coming in as other crimes evidence. The jury was going to hear about them. So why not join these three cases based on those rulings, which defense counsel put on the record as her reason for joining these cases, both orally and in a written motion, so the record is clear as to the basis of the strategy. So let's join these cases. We'll up the ante for the State. Now the State has to prove each of these cases beyond a reasonable doubt. The jury is not just going to hear what comes in based on their venture hearing of these other crimes. The State has to prove it beyond a reasonable doubt. A burden we wouldn't have if we were to try these separately. Further. One hand when they tried them separately. If these cases were tried separately and we brought in other crimes evidence, we wouldn't have a burden to prove each element beyond a reasonable doubt of those other crimes cases that were coming in. So joining them, we have that element. Further, now that they're only coming in as other crimes evidence, we can fully defend each armed robbery in these joined cases and not have considerations of a mini-trial or the court limiting what evidence would come in had these only been allowed in through other crimes. So clearly counsel on the record made clear that this was her strategy, and she in fact said because of the Court's ruling and the proof of other crimes motions, yes, we feel it is the best to consolidate. Just because the defendant is not happy how this turned out or this strategy was not successful, this Court is well aware that that is not enough to overcome the presumption of reasonable trial strategy in this case. Further, as was commented, these cases were legally joined. They were clearly defendant and co-defendant were in a spree, an armed robbery spree. Within those 10 days, in that same general area, a unique method of attacking victims who were alone in an alley near an open garage, a gun was used, a rental car was used. So this was clearly within the realm of the bounds of jointed. The gun was used the first time? Pardon me? The first time there was no rental car? Not from this enterprise, but defendant's own statement indicates he did have a silver rental car for that first offense, just not the enterprise that we brought in as a witness. So counsel's strategy was reasonable. It was based on the other crimes rulings, and jointed was proper in this case. Defendant has not established a first prong. What about counsel's argument that once it was joined, there was a free-for-all, and that everything comes in, and there's no differentiation, and the jury has to try to figure out how this all dovetails with one another, which is very difficult? Right. Well, that's exactly it. Once these cases are joined, defendant would like this court to just decide that, well, his argument is that once they're joined, other crimes rulings still are in play. They still should be treated as other crimes, and the jury should be instructed as that. But that's not what happens when cases are joined. That's the strategy here. Once they are joined, there's substantive evidence on the armed robbery, the murder, and the second armed robbery that comes in, and it's all relevant, and the jury is going to hear things they wouldn't have necessarily heard if they came in, if they were separate, but that was the strategy here. So they didn't need to be – the evidence didn't need to be separated out among each case. The jury was allowed to hear all of the evidence in each of these three cases without limitation because it was substantive evidence. But that's what counsel's saying is the problem here. You know, that's why – Right. He's saying that's the problem. But this is not atypical of a joined or case, and that was the strategy here, and that's what happens in joined or cases. And the defendant cannot show he was prejudiced from trial counsel's decision. He cannot show that because these were joined, or had these not been joined, he would have not been found guilty on the armed robberies. That was what was discussed. There's overwhelming evidence of these two armed robbery cases, not only by the defendant's own admissions to his involvement in these cases, but by the witness's testimony, by the evidence of his rental cars that he was going through after each crime. So there was not only evidence of overwhelming evidence, but in these type of cases the prejudice is also diminished where the defendant cannot definitively show that had these been separate, the other crimes wouldn't have come in in separate trials. He cannot definitively say that that murder would not have come in had there been a separate trial because they were all relevant to each other. They all occurred in 10 days. These were properly joined. Trial counsel had a trial strategy, and just because that trial strategy didn't turn out the way the defense wanted, he cannot have a do-over, just as Paczynski noted out. What about the other issues that are raised in terms of the instruction and the improper argument? Yes, with regard to the IPI 3.14, again, defendant is arguing that that needed to be tailored to the other crimes rulings that had previously been made by the trial court. However, once these were joined, the other crimes rulings really are no longer in play because all three cases are substantive cases and charged. So the people's position is that while he didn't need that instruction, he was getting the benefit of it, but he is not to have been given multiple instructions regarding each piece of evidence in each case or how each case related to another. Once it's admitted as substantive evidence, they are all relevant to each other, and the jury can consider each separately. Further, he cannot show, as Justice Lavin noted, this issue has been forfeited where the defendant did not ask for a specific instruction. He had agreed to this instruction, and further, he cannot show plain error under Issue 2 with regard to that instruction. And I would just like to comment. I know we didn't get into the prosecutor's closing argument. With regard to the defendant's comment that he argued propensity, in this case for the murder, as it related to the armed robbery, that's not, taking a statement in context, that's not what the State was doing. The State made a comment regarding the, when she was arguing the Hawkins armed robbery, she commented that the jury couldn't consider the other two cases, and that would show his intent and ID. And right before she said that, she said, we can look at the other cases to show that that's what he did here. She was not arguing propensity. She was simply, in her next breath, was arguing this is how you can consider it. So there was no prejudice to the defendant from that comment where that's not what the people were doing. We did not argue the murder, show propensity for the armed robberies, and even if the court should find otherwise, it is harmless or not plainer in this case. So basically, in a nutshell, the defendant wanted Joinder. He got Joinder. Defense counsel had a point of trial strategy, and he received a fair trial. For these reasons and those contained in the people's brief, the people respect the request of the court to affirm the defendant's three convictions. Thank you. Thank you. Your Honor, the rule under strictly regarding strategy is not that if counsel makes a decision, you can't question it. The decision has to be sound to have some reasonable probability of success. There was absolutely no way Washington could have won these armed robbery trials after this Joinder. What about your colleague's argument that the fact that the State had to satisfy their burden of proof beyond a reasonable doubt as to all three as opposed to if they're just trying one and the other cases came in as other crimes evidence, and that was coming in as other crimes evidence if they were tried separately. How do you address that argument? Well, Your Honor, the notion that the State had to prove each offense beyond a reasonable doubt at separate trials as well, and the notion that it was somehow easier for defense counsel to fully defend the cases when she had to defend against an armed robbery that was being used substantively and for propensity against the murder being used against the armed robberies, there's no way this makes this any easier for defense counsel. If they came in in a separate trial, there would just be the fact of the other charge or conviction. You're not going to get a video confession that you have to defend against in two unrelated cases. You're not going to have a detective reading an admission in two unrelated cases. You're not going to have detailed descriptions of the victim's injuries in an unrelated case. You're not going to have a life-death witness. The jury, the defense attorney is allowed to consider all this, and counsel just may as well did actually just throw in the towel. There's no chance of success. This is not a strategy. And the State's theory that this is a free-for-all is contradicted by Johnson. I mean, Johnson specifically says that the charged offense is still needed to be subject to a proper jury limiting instruction. There's no authority for the State's claim. And even if the State's right, it just makes counsel's decision to jury these cases even more unreasonable. I mean, if that's true, then counsel needs to have separate trials where she can contain the murder evidence to whatever limited purposes it might be admitted for. I mean, I don't concede that it would be admitted, but if it were, at least it would come in in a limited purpose and a limited evidentiary capacity. But putting these together, it just creates a mountain of evidence that is used in all three cases, and there's no way the jury wasn't asked, first of all, to separate them out, but even if they were, that they could have. And as far as the closing arguments, they speak for themselves. The prosecutor told the jury to consider the murder to prove that's what he does in the armed robberies. That's completely improper, and it's not the only comment that shows the State was using the murder as propensity evidence, which the State on appeal claims is okay. But as I said, it really functions as a statement. The prosecutor also asked that to be used as propensity as saying you can consider it without limitation. And so there's no chance Washington could have prevailed on these armed robbery cases after they were unnecessarily joined. The strategy was to keep out all the crimes evidence. The State asked counsel, invited the jury to consider just a plethora of evidence that was completely unrelated to the armed robberies, didn't make a necessary request to instruct the jury of how to consider all this evidence, and then the State topped it all off by inserting propensity into the equation. If there are no further questions, Your Honor, I would ask that you reverse and re-ad for new trials. Okay. We'd like to thank you for your briefs and your arguments. As always, both officers did a terrific job in summarizing a rather convoluted factual and legal argument and gave good arguments here today. We appreciate it. And we will take it under advisement and issue an opinion shortly.